# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Independence Plus, Inc. v. Walter*, 2012 IL App (1st) 111877

---

| | |
|---|---|
| Appellate Court Caption | INDEPENDENCE PLUS, INC., Plaintiff-Appellant, v. FRANCES WALTER, KRISTEN PRINZ, and BELLOWS AND BELLOWS, P.C., Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-1877 |
| Filed | December 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The malicious prosecution action plaintiff filed against a discharged employee and her attorneys after the employee's administrative complaints and civil action challenging her termination were dismissed was properly dismissed for failing to state a cause of action, since the facts alleged by plaintiff failed to establish the requisite element of special injury. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-011922; the Hon. Charles R. Winkler, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Claudia Oney, of Oney & Arthur, P.C., and Herman J. Marino, both of Chicago, for appellant.

David G. Harding, of Chicago, for appellee Frances Walter.

Daniel B. Meyer and Edward C. Eberspacher IV, both of Chicago, for appellee Kristen Prinz.

Michael Resis, Ellen L. Green, and Andrew Seiber, all of SmithAmundsen LLC, of Chicago, for appellee Bellows & Bellows, P.C.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Howse concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Independence Plus, Inc. (IPI), appeals from the dismissal of its malicious prosecution suit against defendants Frances Walter, Kristen Prinz and Prinz's law firm, Bellows and Bellows, P.C. (Bellows).

¶ 2    The facts behind the underlying proceedings are as follows. IPI, a company that specializes in providing in-home private duty nursing care, hired Walter in May 2006 and fired her in November of that same year, allegedly for threatening another staff member following a series of emotional outbursts. Subsequently, Walter filed a series of administrative complaints against IPI, namely, (1) a complaint under the Personnel Record Review Act (820 ILCS 40/1 *et seq.* (West 2008)) with the Illinois Department of Labor, (2) a complaint under the Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2008)) with the Illinois Department of Labor, and (3) a charge of discrimination with the Illinois Department of Human Rights, alleging sexual harassment, age discrimination and retaliation. These complaints were all dismissed. Additionally, Walter filed a complaint in the circuit court against IPI, seeking damages for retaliatory discharge and wrongful termination. Walter voluntarily dismissed this action on August 17, 2009. In both her action before the circuit court and in her administrative complaints, Walter was represented by Prinz and by Prinz's law firm, Bellows.

¶ 3    On October 7, 2009, IPI filed the instant complaint for malicious prosecution against Walter, Prinz and Bellows. Defendants moved to dismiss IPI's complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)), contending, *inter alia*,

-2-

that IPI had failed to allege special injury, as required to recover for malicious prosecution. The trial court initially denied defendants' motion, but upon reconsideration, the court granted it and dismissed IPI's complaint. IPI now appeals. For the reasons that follow, we affirm.

¶ 4                                  I. BACKGROUND

¶ 5        IPI's amended complaint, which frames the issues now before us, alleges the following. IPI hired Walter as a clinical manager on May 5, 2006. By October 2006, Walter's conduct had become "increasingly erratic and abusive"; she had screaming arguments with staff and locked herself in her office. On November 16, 2006, Walter sent threatening emails to another IPI employee. IPI launched an investigation into her actions and fired her on November 27, 2006.

¶ 6        Following her termination, Walter, through her attorney Prinz, filed a total of four actions against IPI, all of which were allegedly filed without probable cause and with malice solely for the purpose of harassing and debilitating IPI. As noted earlier, these actions consist of (1) a Personnel Record Review Act complaint with the Illinois Department of Labor, (2) a Wage Payment and Collection Act complaint with the Illinois Department of Labor, and (3) a charge of discrimination with the Illinois Department of Human Rights, all three of which were filed on May 25, 2007, and (4) a circuit court complaint against IPI, filed on November 15, 2007.

¶ 7        IPI's complaint discusses each of these actions in turn. Walter's first action, under the Personnel Record Review Act, was an attempt to access "certain unidentified documents" that she claimed were a part of her personnel file at IPI. However, according to IPI, such documents did not exist, Walter was aware that they did not exist, and, in any event, had such documents existed, Walter could have obtained them through her other civil actions, rendering this complaint "duplicative and unnecessary." This complaint was dismissed in favor of IPI on January 2, 2008.

¶ 8        In Walter's second action, a wage claim filed with the Illinois Department of Labor, she sought to recover wages based upon her allegation that, when she was hired, IPI promised her a raise if she had a positive six-month performance evaluation. IPI alleged that this claim was both factually unsound, since IPI had made no such promise in the first place and Walter did not receive a positive six-month evaluation, and legally without merit, since the Wage Payment and Collection Act only covers earned wages, not promised raises. This complaint was dismissed in favor of IPI on August 7, 2007.

¶ 9        Walter's third action was a charge of discrimination, filed with the Illinois Department of Human Rights, in which she alleged that she was subjected to sexual harassment and age discrimination by another IPI employee and that IPI fired her in retaliation for reporting this conduct. This complaint was dismissed in favor of IPI on August 28, 2008. The Illinois Department of Human Rights specifically found that its investigation did not reveal that Walter was sexually harassed or harassed because of her age, and it also specifically found that IPI did not fire Walter in retaliation but because of her "escalating behavior" toward another IPI employee.

¶ 10    Walter's fourth and final action was a complaint for retaliatory discharge and wrongful termination filed in the circuit court against IPI on November 15, 2007, when two of her administrative complaints were still pending. The wrongful termination count was both duplicative of and preempted by Walter's charge of discrimination filed with the Illinois Department of Human Rights, and after IPI filed a motion to dismiss this count, Walter voluntarily dismissed it in March 2008. Meanwhile, in her retaliatory discharge count, Walter claimed, for the first time, that IPI had terminated her employment because she complained about patient care. IPI states that this claim was a complete fabrication and not credible, since Walter, as a licensed nurse, had a statutory duty to report any failure of care, and she had made no such report. In any event, Walter voluntarily dismissed her retaliatory discharge count on August 17, 2009.

¶ 11    Walter also amended her circuit court complaint to add two more counts, both of which, according to IPI, were equally nonmeritorious, and both of which were eventually voluntarily dismissed by Walter. First, after the Illinois Department of Human Rights dismissed her charge of discrimination, Walter attempted to seek review of that decision in the circuit court, despite being aware that under the applicable statute, the circuit court lacked jurisdiction over such a claim. Second, Walter amended her complaint to add a count for spoliation, which IPI argues was without merit because spoliation is not an independent cause of action in Illinois.[1] As noted, Walter subsequently voluntarily dismissed these two counts, on August 17, 2009.

¶ 12    With regard to the injury it suffered as a result of Walter's four actions, IPI alleged that Walter's allegations that IPI was engaged in illegal and improper conduct had "an immediate an[d] direct debilitating effect on IPI's ability to conduct business," because IPI is in a "highly regulated industry." IPI further alleged that, throughout the course of Walter's circuit court action against IPI, defendants inflicted injury on IPI by issuing "outrageous discovery demands" for the sole purpose of causing financial difficulty to IPI:

   "For example, Defendants demanded Defendant Walter's hard drive years after Walter's employment was terminated. When IPI reconstructed Defendant Walter's hard drive, Defendants failed to make arrangements to examine it. Defendants then demanded IPI's server [backup] tapes that were in use during Walter's six-month employ. After recovering them, Defendants failed to examine them or even take possession of them. Defendants demanded thousands of pages of private nursing information and patient care records, requiring hours of redaction by Plaintiff, which Defendants failed to examine *** as well. Defendants also demanded IPI produce the names and contact information of hundreds of IPI employees in order to search for disgruntled employees and inform IPI employees that IPI was defending a [lawsuit] alleging improper payment of employees and dangerous policies and procedures affecting patient care."

¶ 13    IPI's complaint further states that on January 21, 2009, IPI filed its original complaint in

---

[1]See *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 192-93 (1995) (an action for negligent spoliation can be stated under existing negligence law without need for the creation of an independent cause of action for spoliation).

the circuit court against Walter, seeking damages for malicious prosecution. (That case was the predecessor to this action. For clarity, we shall refer to it as "the January 2009 action.") Walter, represented by Prinz and Bellows, filed a motion to dismiss IPI's complaint. Prior to any hearing on that motion, IPI filed a motion to voluntarily dismiss its complaint without prejudice. The trial court denied Walter's motion and granted IPI's motion. Walter then sought to appeal the trial court's denial of her motion to dismiss, even though, according to IPI, she was aware that such order was not final and appealable. Subsequently, this court dismissed Walter's appeal for lack of appellate jurisdiction.

¶ 14    On October 7, 2009, IPI filed the instant complaint, seeking damages for malicious prosecution for Walter's four actions as well as for her appeal in IPI's January 2009 action.

¶ 15    Defendants moved to dismiss IPI's complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)), contending, among other things, that IPI had failed to state a cause of action for malicious prosecution because it had not alleged that it suffered any special injury. Defendants' other contentions in their motion to dismiss are not at issue in this appeal and therefore need not be discussed here. The trial court initially denied defendants' motion. However, defendants filed a motion to reconsider, and the trial court granted that motion in an order issued on May 23, 2011. The court found that IPI had merely alleged "reputational harm and ordinary expenses and injuries incidental to defending a lawsuit," which were insufficient to constitute special injury under Illinois law. Accordingly, the trial court dismissed IPI's complaint. IPI now appeals.

¶ 16                                    II. ANALYSIS

¶ 17    In this appeal, the sole issue is whether the trial court erred in dismissing IPI's malicious prosecution complaint for failure to adequately plead the element of special injury.[2] In reviewing the sufficiency of a complaint under a section 2-615 motion to dismiss, we accept as true all well-pled facts and all reasonable inferences that may be drawn from those facts, and we construe the allegations of the complaint in the light most favorable to the plaintiff. *Young v. Bryco Arms*, 213 Ill. 2d 433, 441 (2004). We review the trial court's order granting defendants' section 2-615 motion *de novo*. *Id.* at 440.

¶ 18    To prevail on a claim for malicious prosecution, the plaintiff must plead and prove that (1) the defendant brought the underlying suits maliciously and without probable cause, (2) the underlying suits were terminated in favor of plaintiff, and (3) the plaintiff suffered "special injury" beyond the usual expense, time and annoyance involved in defending a lawsuit. *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 272 (1997). Special injury has been defined as " 'injury not necessarily resulting in any and all suits prosecuted to recover for like causes of action.' " *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 817 (1983) (quoting *Schwartz v. Schwartz*, 366 Ill. 247, 250 (1937)); see also *Reed v.*

---

[2]Although defendants state for the record in their brief that they do not concede that IPI properly pled the remaining two elements of malicious prosecution, the arguments and authority presented in defendants' brief are focused exclusively on the element of special injury. Accordingly, we shall confine our analysis to that element.

*Doctor's Associates, Inc.*, 355 Ill. App. 3d 865, 875 (2005) (the plaintiffs' litigation costs "constitute nothing more than ordinary litigation expenses and are not considered special damages"); *Keefe v. Aluminum Co. of America*, 166 Ill. App. 3d 316, 319 (1988) (where the plaintiff was forced to spend time and money to defend himself and his personal and business affairs were examined in the course of discovery, such "litigation inconveniences" did not constitute special injury, since they are "common to most lawsuits"); *Petrick v. Kaminski*, 68 Ill. App. 3d 649, 651 (1979) (affirming dismissal of suit for malicious prosecution of a debt collection action where the plaintiff's claimed damages were shame and humiliation, lost wages, lost credit rating and expense of attorney fees, since such damages were "matters attendant to the ordinary civil suit").

¶ 19   The reasoning behind the special injury requirement lies in the fact that the law does not look with favor upon malicious prosecution suits, because of the general principle that the courts should be open for litigants to settle their rights without fearing prosecution for doing so. *Schwartz*, 366 Ill. at 250; *Shedd v. Patterson*, 302 Ill. 355, 359 (1922) (cause of action for malicious prosecution is limited because "the courts of law are open to every citizen upon the penalty of lawful costs, and he may have his rights determined without the risk of being sued and having to respond in damages for seeking to enforce his right"). As our supreme court has explained:

"[T]he courts are open to every citizen to claim what 'he deems to be his right without fear of being prosecuted for heavy damages.' [Citation.] Thus, the ordinary trouble and expense which arise from '*ordinary forms of legal controversy*, should be endured by the law-abiding citizen as one of the inevitable burdens, which men must sustain under civil government.' (Emphasis added.) [Citation.]" *Cult Awareness*, 177 Ill. 2d at 280-81 (quoting *Smith v. Michigan Buggy Co.*, 175 Ill. 619, 628-29 (1898)).

However, the societal interest in permitting the honest assertion of rights in our court rooms must be balanced against the societal interest in preventing harassment through lawsuits. *Cult Awareness*, 177 Ill. 2d at 284.

¶ 20   Here, plaintiffs allege that they have adequately alleged special injury in three ways: (1) defendants made false allegations of illegal conduct on the part of IPI, (2) defendants filed a total of four claims against IPI, thereby subjecting IPI to a "sustained onslaught of litigation"; and (3) defendants abused the discovery process for the sole purposes of harassing and causing expense to IPI. We consider these contentions in turn.

¶ 21                                  A. False Allegations of Illegal Conduct

¶ 22   IPI's first contention is that it suffered special injury because defendants falsely accused it of illegal and improper conduct in order to inflict "direct damage to the business of IPI." In particular, IPI claims that it was injured by Walter's allegation in the underlying circuit court action that IPI terminated her employment in retaliation for complaining about patient care. Although IPI's complaint does not give any further detail about this allegation, IPI asserted during oral argument before this court that the complained-of failure of care, if true, would have constituted a felony.

¶ 23   At the outset, we note that virtually all civil actions sounding in tort involve accusations

-6-

of illegal or improper conduct in some capacity. Such accusations are hardly "special" but, rather, are entirely ordinary consequences of litigation. See *Reed*, 355 Ill. App. 3d at 875 (ordinary litigation expenses are not considered special damages); *Keefe*, 166 Ill. App. 3d at 319 (litigation inconveniences that are common to most lawsuits do not constitute special injury). This is particularly true for a retaliatory discharge claim, such as the one at issue in the underlying action, which is premised upon allegations that the plaintiff was discharged in retaliation for her reporting of illegal or improper conduct. See *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 376 (1998) (discussing elements of a retaliatory discharge claim). In the underlying action, Walter claimed that IPI's ostensible reasons for firing her were merely a pretext for retaliation because she had complained about patient care. Thus, Walter's alleged complaint about patient care was not unrelated to her retaliatory discharge claim, as implied by counsel for IPI during oral argument but, rather, an integral part of that claim. Such allegations of illegal or improper conduct would be a part of " 'any and all suits prosecuted to recover for like causes of action.' " *Doyle*, 120 Ill. App. 3d at 817 (quoting *Schwartz*, 366 Ill. at 250).

¶ 24    IPI nevertheless contends that, in this particular case, defendants' accusations of illegal and improper conduct caused "special injury" to IPI in two ways: first, it suffered harm to its reputation; and second, it was required to spend "an exceptional amount of its resources" in defending against these accusations. In this regard, IPI notes that it is in a "highly regulated industry," such that claims of illegal and improper conduct would be particularly harmful to IPI's business.

¶ 25    With regard to the reputational harm alleged by IPI, it is well established that injury to one's reputation "is an unfortunate consequence of most litigation and does not constitute a special loss." *Doyle*, 120 Ill. App. 3d at 817; see also *Stopka v. Lesser*, 82 Ill. App. 3d 323, 325 (1980); *Balthazar v. Dowling*, 65 Ill. App. 3d 824, 826 (1978). For instance, in *Stopka*, 82 Ill. App. 3d at 324, the plaintiff physician brought a malicious prosecution suit against an attorney who had filed an allegedly baseless malpractice suit against him. The *Stopka* court affirmed the dismissal of his complaint for failure to adequately allege special injury. *Id.* at 325. In doing so, the court explicitly held that the " 'necessity for defending one's reputation' " was considered " 'ordinary injury' " as a matter of law and was insufficient to support a claim for malicious prosecution. *Id.* (quoting *Lyddon v. Shaw*, 56 Ill. App. 3d 815, 818 (1978)). Similarly, in *Balthazar*, 65 Ill. App. 3d at 826, the court found that the plaintiff physicians had failed to show special injury as a result of a malpractice suit where they asserted that their malpractice premiums had risen and their professional reputations had been impaired. We additionally note that the physician-plaintiffs in both *Stopka* and *Balthazar* were members of a "highly regulated industry," namely, the practice of medicine, and yet such status did not render their claims of reputational harm cognizable in the context of a malicious prosecution claim. Likewise, the fact that IPI conducts business in a highly regulated industry does not transform reputational harm into special injury. Nor does IPI present us with any authority that would support such a proposition.

¶ 26    IPI's allegation that it was required to spend a significant amount of resources to defend against defendants' claims is similarly insufficient to constitute special injury. Litigation costs are merely "ordinary injuries" that would result from any litigation and are therefore

not special in nature. See *Doyle*, 120 Ill. App. 3d at 817-18; *Reed*, 355 Ill. App. 3d at 875; *Petrick*, 68 Ill. App. 3d at 651. Consequently, we must reject IPI's contention that it adequately alleged special injury based upon defendants' accusations of illegal and improper conduct.

¶ 27                                    B. Multiplicity of Actions

¶ 28    Notwithstanding the foregoing, IPI contends that the multiplicity of baseless actions filed by the defendants in this case forms a campaign of harassment that is greater than the sum of its parts and that, when viewed as a whole, can hardly be considered ordinary. In that regard, IPI claims that this case is analogous to *Cult Awareness*, 177 Ill. 2d 267, and *Shedd*, 302 Ill. 355, both cases in which our supreme court found that a "sustained onslaught of litigation" (*Cult Awareness*, 177 Ill. 2d at 285) was sufficient to satisfy the special injury requirement. Defendants, on the other hand, contend that both *Cult Awareness* and *Shedd* are factually inapposite in that the complained-of conduct here is not nearly as egregious as the conduct involved in those cases. We agree with defendants.

¶ 29    The plaintiff in *Cult Awareness* was a not-for-profit corporation engaged in educating the public with respect to religious rights, freedoms and responsibilities. *Id.* at 269. Plaintiff brought a malicious prosecution suit against the Church of Scientology, alleging that the Church of Scientology induced its members to bring a total of 21 meritless suits against plaintiff in a 17-month time span for the express purpose of driving plaintiff to bankruptcy. *Id*. Our supreme court held that these allegations, if true, were sufficient to satisfy the special injury rule:

> "[T]he present case involves allegations that a large national corporation improperly induced its members to engage in a national campaign of simultaneous malicious prosecution. Plaintiff has alleged that the Church of Scientology instituted the simultaneous suits, not to resolve any legal dispute between the parties, but to keep plaintiff from engaging in its business of disseminating information regarding religious freedom. The invidiousness of the alleged conspiracy is best reflected in the fact that plaintiff was sued 21 times over the course of a 17-month period in jurisdictions ranging from New York to California. Such a sustained onslaught of litigation can hardly be deemed 'ordinary' if plaintiff can prove that the actions were brought without probable cause and with malice." *Id.* at 285.

¶ 30    Plaintiff contends that the "sustained onslaught of litigation" instigated by the defendant in *Cult Awareness* is analogous to the multiple actions brought by the defendants here, going so far as to state that in this regard, this case is "[i]dentical to *Cult Awareness*." We disagree. The actions filed by Walter and her counsel–three administrative complaints and a single circuit court complaint in Illinois–are not comparable in scope to the situation in *Cult Awareness*, where a large organization induced its members to engage in a national campaign of litigation that comprised a total of 21 actions.

¶ 31    Nor is this case analogous to *Shedd*, 302 Ill. 355. In that case, the defendant had filed nine successive lawsuits against the plaintiff relating to the foreclosure of a leasehold estate for unpaid rents. *Id.* at 356. The *Shedd* court found that the plaintiff had adequately alleged

special injury, since the defendant continued to bring successive lawsuits against the plaintiff despite the fact that the substantive issues in the case "had been finally and conclusively adjudicated against the defendant" and the courts "had repeatedly decided that the defendant had no grievance." *Id.* at 361-62.

¶ 32    By contrast, the three administrative complaints filed by Walter and her counsel were not successive actions attempting to relitigate substantive issues that had already been decided but, rather, were filed simultaneously and addressed separate and distinct issues. As noted, Walter's complaint filed under the Personnel Record Review Act was an attempt to obtain documents that Walter claimed were part of her personnel file at IPI. Her wage claim was an attempt to obtain compensation that she claimed was owed to her under the Illinois Wage Payment and Collection Act based on an alleged promised raise. Finally, her discrimination charge with the Illinois Department of Human Rights was premised on allegations of sexual harassment, age discrimination and retaliatory discharge. These three complaints were concurrent actions litigating separate matters, not successive actions litigating the same matter, as was the case in *Shedd*.

¶ 33    IPI alleges that Walter's Personnel Record Review Act complaint was "duplicative and unnecessary" in that, if such documents existed, she could have obtained them via her other civil actions. However, even taking that allegation as true, as we must upon considering a section 2-615 motion to dismiss, this complaint was not an attempt to relitigate an issue that had already been substantively decided against her. On the contrary, it was filed concurrently with her other administrative complaints and prior to her circuit court action. Thus, it cannot be said to be analogous to the claims of the *Shedd* defendant.

¶ 34    The only action brought by defendants in this case that was arguably comparable to the successive actions brought in *Shedd* was her circuit court action, to the extent that it was an attempt to relitigate the allegations of retaliatory discharge that Walter had previously raised in her complaint with the Illinois Department of Human Rights. However, we note that Walter's circuit court claim for retaliatory discharge was not entirely duplicative of her prior complaint. Rather, it was at least partially premised upon distinct factual allegations, namely, Walter's claim that IPI dismissed her in retaliation for her complaints about the quality of patient care. In any event, a single, partially duplicative action cannot fairly be compared to the multiplicity of actions that were brought in *Shedd* to relitigate substantive issues that had already been conclusively decided by the courts.

¶ 35    Rather, we find this case to be analogous to *Howard v. Firmand*, 378 Ill. App. 3d 147, 153 (2007), where the court found that successive actions filed by the defendant against the plaintiff did not rise to the level of harassment found in *Cult Awareness* and in *Shedd* and therefore were insufficient to constitute special injury.

¶ 36    The facts of *Howard* are as follows: the plaintiff and the defendant initially lived together, but, following an argument, the defendant moved out. *Id.* at 148. The defendant then filed two successive petitions seeking orders of protection against the plaintiff, alleging that the plaintiff had physically abused her. *Id.* Both petitions were denied. *Id.* The plaintiff subsequently brought a malicious prosecution suit against the defendant. *Id.* at 148-49. The trial court dismissed his complaint at the summary judgment stage, and the *Howard* court

affirmed, explaining:

> "The facts here do not rise to the level of harassment that concerned the court in *Shedd* and *Cult*. There was no onslaught of litigation here. Nor did [the defendant] bring several successive petitions against [the plaintiff]. [The defendant] filed two section 214(a) petitions and alleged different facts in each. The only injury suffered by [the plaintiff] was the customary expense, time and annoyance in defending against the litigation. These injuries are not sufficient to sustain a cause of action for malicious prosecution." *Id.* at 153.

¶ 37    Likewise, as has been discussed, we find that the facts of this case do not rise to the level of harassment that concerned the court in *Shedd* and *Cult Awareness*. Although this case is not exactly like *Howard*, we find it to be significantly closer to the facts of *Howard* than it is to the conspiracy in *Cult Awareness*, where the plaintiff was sued 21 times in a 17-month period in jurisdictions across the country, or even to the nine successive actions filed by the defendant in *Shedd*. Consequently, like the court in *Howard*, we reject IPI's argument that the multiple actions filed by defendant constitute special injury to IPI.

¶ 38                                    C. Discovery Abuse

¶ 39    IPI finally contends that it incurred special injury as a result of defendants' abuse of the discovery process during Walter's circuit court action. IPI's allegations in this regard fall into two categories. First, IPI alleges that defendants made expensive discovery demands for the sole apparent purpose of causing economic harm to IPI. Specifically, IPI alleges that defendants demanded Walter's hard drive, server backup tapes that were in use during Walter's employment and "thousands of pages" of private nursing information and patient care records; however, when IPI produced these items, defendants failed to even examine them. Second, IPI alleges that defendants demanded the names and contact information of IPI employees so that they could contact those employees and inform them that IPI had been accused of improper payment of employees and improper patient care.

¶ 40    IPI's allegations regarding the cost of complying with discovery demands do not amount to special injury. A defendant in a typical lawsuit can expect that the plaintiff will make various discovery demands, and the defendant can also expect that complying with those demands may be both expensive and time-consuming, particularly if the defendant is a business with extensive records that may potentially be relevant to the case. Such inconvenience and expenditure is a routine, if unfortunate, part of the litigation process and does not constitute special injury for purposes of a malicious prosecution action. See *Keefe*, 166 Ill. App. 3d at 319 (having one's personal and business affairs examined in the course of discovery is an inconvenience "common to most lawsuits" and is not special in nature).

¶ 41    IPI nevertheless argues that the discovery expenditures it incurred here went beyond the normal costs of litigation because the discovery demands at issue were made solely for purposes of harassing and causing economic harm to IPI. Indeed, IPI claims that defendants made these discovery requests, in part, so that they could search for disgruntled employees and inform them that IPI had been accused of improper payment of employees and patient care procedures. We cannot accept the argument that IPI's expenditures in this regard

-10-

constitute special injury, because such an interpretation of the element of special injury would render it nearly toothless by way of conflating it with the element of malice and lack of probable cause. Probable cause has been defined as a state of facts that would lead an ordinary person to have " 'an honest and sound suspicion' " that her claim is meritorious. *Ely v. National Super Markets, Inc.*, 149 Ill. App. 3d 752, 757-58 (1986) (quoting *Carbaugh v. Peat*, 40 Ill. App. 2d 37, 47 (1963)). Where a plaintiff lacks even an honest suspicion that her claim has merit, then her suit is not brought for the honest vindication of rights, and any discovery demands that she makes in the course of that suit are likely to be for harassment of one form or another. If the inconvenience and expense of such discovery demands could be considered special injury, then the special injury requirement would lose nearly all of its vitality as an element separate and distinct from that of malice and lack of probable cause. IPI has not presented any authority that would support such a change in the law. On the contrary, our supreme court in *Cult Awareness* emphasized the continuing vitality of the special injury requirement. *Cult Awareness*, 177 Ill. 2d at 286 (stating that "we wish to stress that our holding with respect to the special injury requirement should not be viewed as a rejection of the rule as set forth in our earlier opinions"). Consequently, we reject IPI's contention that the expense it incurred in complying with defendants' discovery demands constitutes a special injury.

¶ 42      We note in passing that even where a party fails to meet the requirement of special injury for purposes of a malicious prosecution suit, that party may still obtain relief for an opponent's abuse of the discovery process through sanctions under Supreme Court Rules 137 and 219. Ill. S. Ct. R. 137 (eff. Feb. 1, 1994); R. 219 (eff. July 1, 2002). Rule 137 provides that an attorney's signature on a pleading, motion, or other paper constitutes a certificate

> "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137 (eff. Feb. 1, 1994).

It further provides that, where an attorney violates this rule, the trial court may impose appropriate sanctions upon the attorney or her client. *Id.* Likewise, under Rule 219(c), the trial court is authorized to respond to discovery abuses by imposing sanctions upon the offending party, including reasonable expenses incurred as a result of the abuse as well as a monetary penalty in case of willful abuse. Ill. S. Ct. R. 219 (eff. July 1, 2002).

¶ 43      Plaintiff correctly points out that the availability of such relief does not preempt recovery for malicious prosecution as long as all elements of the tort have been satisfied. See *Cult Awareness*, 177 Ill. 2d at 279 ("Although Rule 137 was adopted as a means of preventing false and frivolous filings, it was not meant to preempt our existing tort law. The courts of this state have recognized, both before and after the adoption of Rule 137, the viability of a cause of action sounding in malicious prosecution."). However, for all the reasons that have been discussed above, we find that the element of special injury has not been satisfied under the facts as alleged by IPI in its complaint.

¶ 44      Accordingly, the judgment of the trial court dismissing IPI's complaint for failure to state

a cause of action for malicious prosecution is affirmed.

¶ 45    Affirmed.